IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**SONIA I. VELEZ-VELEZ,**

**Plaintiff,**

**v.**                                                           Civ. No. 11-2231 (GAG)

**PUERTO RICO HIGHWAY AND
TRANSPORTATION AUTHORITY, et al.,**

**Defendants.**

## OPINION AND ORDER

Sonia Velez-Velez ("Plaintiff") sued Ruben Hernandez Gregorat ("Hernandez") and Brenda Gomila ("Gomila") (collectively "Defendants") for violations of the First Amendment, Due Process Clause, and several Puerto Rico laws. Defendants moved to summarily dismiss. (Docket No. 76.) For the following reasons, the court **GRANTS** Defendants' motion for summary judgment.

### I.   STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see FED. R. CIV. P. 56(a). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (internal citations omitted).

1

Civ. No. 11-2231 (GAG)

The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. "The movant must aver an absence of evidence to support the nonmoving party's case. The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The nonmovant may establish a fact is genuinely in dispute by citing particular evidence in the record or showing that either the materials cited by the movant "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B). If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and give that party the benefit of any and all reasonable inferences. Id. at 255. Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate, however, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Mun. of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

## II.    RELEVANT FACTUAL BACKGROUND[1]

---

[1] The parties have defeated the purpose of consolidating discovery in submitting their statements of fact and replies thereto. The statements and the responses either admitting, qualifying, or denying the statements are muddier than the actual record. The parties disputed the authenticity of each other's filings, provided boilerplate, unnecessarily lengthy denials, and made navigating their submissions cumbersome. The court consequently combed the entire record and relied only

**Civ. No. 11-2231 (GAG)**

Plaintiff began working for the Puerto Rico Highway and Transportation Authority ("PRHTA") in 2001 until December 23, 2010, as the Director of Human Resources Transactions. (Docket No. 74-1 at 11.)  She directed and supervised recruitment and selection of personnel, appointments and transfers, irregular personnel, leaves and attendance, and the personnel files. (Id.)  She is not currently employed.  (Id.)  Plaintiff is a self-described member of the Popular Democratic Party ("PDP") and has never been a member of another party.  (Id. at 12; Docket No. 74-2 at 23.)  She has worked as a poll watcher for the PDP on several occasions.  (Docket No. 74-2 at 25.)  She has participated in several political events, activities, and outreach programs. (Id. at 25-27.)  She does not personally know Hernandez's or Gomila's political affiliations, though it is uncontested that they are members of the PDP's rival party, the New Progressive Party ("NPP").  (Docket No. 74-1 at 24-25, 35; see also Docket Nos. 87-1 at 2-3; 87-3 at 3.)

Plaintiff claims that Defendants knew her political affiliation.  (Docket No. 74-2 at 29.) She bases this claim on her own assumption that everyone in the human resources office at PRHTA knew everyone else's political affiliation because "everyone talked about everyone else's affiliations" and Gomila was a part of the office.  (Id.)  She also bases her assertion on her attendance at candidate events in the PRHTA cafeteria, when she would listen to her party's candidates speak at her workplace, because others from her office could see her while she attended.  (Id. at 29-30.)

Plaintiff states that Gomila diminished her responsibilities in several ways.  For example, Gomila prohibited her from supervising the personnel appointment process.  (Docket No. 74-1 at 18.)  She claims that the Human Resources Director was supposed to meet with her to notify her

---

on its review, taking everything in the light most favorable to Plaintiff and not relying on anything in question; thus, the court **MOOTS** the motion to strike at Docket No. 92.

3

**Civ. No. 11-2231 (GAG)**

of an appointment, which she then communicated to her staff, and that Gomila circumvented this process by giving the appointment directly to a technician to record.  (Id. at 18-19.)

Plaintiff also states that Gomila removed all Appointments and Transactions Sections employees' access to HR Sense, a human resources database, and that she refused to reinstate her access after reinstating other employees' access.  (Id. at 35-36, 38-39.)  She claims Gomila never signed her job description, which presumably would have entitled her to access, though that is unclear.  (See Docket No. 74-3 at 19-20.)  Plaintiff, after reviewing correspondence during her deposition, however, admitted that access was reinstated after she followed the necessary protocols to request reinstatement within approximately fifteen days.  (Docket No. 74-1 at 41.)  Plaintiff also states that Gomila restricted her access to a photocopier and fax machine.  (Docket No. 74-4 at 11-12.)  Plaintiff stresses that these elements are essential to her job.  (Id. at 13.)

Plaintiff contends that only Gomila was allowed access to an emergency exit while it was being installed in the workplace and that Gomila limited all supervisors' access to personnel files.  (Docket No. 74-1 at 26, 29.)  Plaintiff recalls that walls and air ducts were removed from her office and she would trip over materials left on the floor from unfinished renovations during the time period when employees were moved from offices to cubicles and the cubicles needed construction.  (Id. at 26, 31-33.)  Furthermore, Plaintiff recalls that she, Alberto Cabrera, Aida Arocho, Maria Ortiz, and other supervisors were moved from an office to a cubicle.  (Id. at 31.)  She elaborates, "They kept [moving her cubicle] constantly."  (Docket No. 74-1 at 32.)  Plaintiff claims she was moved into a shed or a file room without phones, electricity, or computers for several weeks.

Gomila submitted an affidavit in which she claimed she did not know Plaintiff's political affiliation, she gave instructions commensurate with the PRHTA's personnel rules and

4

**Civ. No. 11-2231 (GAG)**

regulations, and she never politically discriminated against Plaintiff. (See generally Docket No. 74-5.) Indeed, on June 18, 2009, Gomila and Hernandez sent a letter to "All Personnel [in] Human Resources and Industrial Safety Director's Office." (Docket No. 74-6.) The letter states, "Every employee of the Director's Office who needs to use the file for official purposes shall make the request to the Special Assistant to the Secretary." (Id.) Furthermore, Gomila emailed several staffers on January 28, 2010, informing them that "access w[ould] be given, in a limited manner, to the employees who strictly need [HR Sense] so that the works of our Office are not affected" and subsequently wrote to them prohibiting all employees from entering the file area. (Docket Nos. 74-8; 81-2.) Plaintiff then requested use from Gomila, which was granted on February 18, 2010. (Docket Nos. 74-9; 81-3.) Gomila also informed four other employees that they would be relocated from offices to cubicles, and she informed only Plaintiff that printer, fax, and copier use would be curtailed to save costs. (Docket Nos. 81-1, 81-2.)

Plaintiff's claims against Hernandez surround three events: Hernandez's statements to one of Plaintiff's colleagues, enactment of a resolution whose execution caused Plaintiff's termination, and selective enforcement of the resolution against only PDP members. Plaintiff avers that Hernandez met with the former Director of Human Resources, Luis Sanchez Casanova, on multiple occasions from January to June 2009. (See Docket No. 74-2 at 34.) Sanchez relayed to Plaintiff that Hernandez "was pressing him to give a letter to fire [PDP] employees at the Office of Human Resources," and "they were looking for attorneys to justify the manner in which they were fired." (Id. at 34-35.)

Plaintiff next claims that Hernandez's February 2010 enactment of a resolution nullifying Resolutions 2001-13 and 2001-24, the impetus for Plaintiff's hiring, constitutes political discrimination. The 2010 resolution impacted Plaintiff because it effectively nullified her 2001

5

Civ. No. 11-2231 (GAG)

transfer, thereby permitting Defendants to terminate her for failure to be hired under the merit principle.  (See Docket No. 74-13.)  Each employee who suffered termination is allegedly a member of the PDP; no NPP members were terminated under the resolution.  (Docket No. 87-4 at 3.)  Hernandez contends he acted in accordance with the law in issuing the resolution and that he never knew Plaintiff's political affiliation.  (Docket No. 74-14.)

Plaintiff finally claims that Defendants violated her due process rights.  She admits she received notice of intent to terminate her in the form of a letter in February 2010 that provided her the opportunity for a pre-termination hearing, which she pursued in June or July 2010.  (Docket Nos. 74 at 18; 74-3 at 23; 87 at 15, 25.)  Indeed, Plaintiff and her lawyer requested a copy of the audit report substantiating Plaintiff's termination, and Defendants provided her with a copy, though Plaintiff expresses concerns regarding its contents and Defendants' purported failure to provide a copy of the administrative tribunal's ruling (Defendants include a copy in the record here).  (Id.)  Plaintiff also contests the sufficiency of the notice, claiming that the letter failed to contain a signature, stamp, and any analysis.  Her statement of facts, however, says that she received notice of intent to nullify her position and she admits she engaged in the administrative review process.  (Docket No. 87 at 15, 25.)  Plaintiff also states that her attorney requested a stay of the administrative hearing, that it was granted, and that no final decision was ever issued.  (Docket No. 74-4 at 8-9.)  Plaintiff subsequently was terminated effective December 23, 2010.  (Docket No. 74-3 at 24.)  She filed this complaint on December 20, 2011.

## III.   DISCUSSION

### A. Political Discrimination

Defendants are correct that the discrimination claim is time-barred.  Plaintiff filed this

**Civ. No. 11-2231 (GAG)**

case on December 20, 2011.  "State law governs the statute of limitations for claims brought under § 1983.  In Puerto Rico, one must bring a claim under 42 U.S.C. § 1983 within one year of the time the cause of action accrues."  Marrero-Colon v. PREPA, 341 F. App'x. 652, 653 (1st Cir. 2009).  "Section 1983 claims generally accrue when the plaintiff knows, or has reason to know of the injury on which the action is based," and "a plaintiff is deemed to know or have reason to know at the time of the act itself and not at the point that the harmful consequences are felt."  Vega v. Cruz-Burgos, 537 F.3d 14, 20 (1st Cir. 2008) (internal citations omitted) (internal quotation marks omitted).  The clock begins to run when a plaintiff receives a letter that allows him to reliably know that his employer is taking an adverse employment action against him.  See id.; see also Del. State Coll. v. Ricks, 449 U.S. 250, 261-62 (1980) (holding that the statute of limitations in a Title VII case began to run when a university professor received notice that his tenure would be denied, not when his employment ended one year later).

The Supreme Court addressed a similar issue in Ricks:

> The Board of Trustees had made clear well before September 12[, the date the employer notified the plaintiff of termination, rather than intent to terminate], that it had formally rejected Ricks' tenure bid. The June 26 letter itself characterized that as the Board's official position.  It is apparent, of course, that the Board in the June 26 letter indicated a willingness to change its prior decision if Ricks' grievance were found to be meritorious. But entertaining a grievance complaining of the tenure decision does not suggest that the earlier decision was in any respect tentative. The grievance procedure, by its nature, is a remedy for a prior decision, not an opportunity to influence that decision before it is made. [Furthermore,] we already have held that the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods.  The existence of careful procedures to assure fairness in the tenure decision should not obscure the principle that limitations periods normally commence when the employer's decision is made.

7

**Civ. No. 11-2231 (GAG)**

449 U.S. at 261-62.  The Supreme Court's holding indicates that a formal notification of intent to dismiss is just as good as an actual dismissal for the purpose of starting the limitations clock when the letter conveys an official position.

Defendants reply with a compelling First Circuit case in Pastrana-Lopez v. P.R. Fire Dep't., 338 F. App'x. 8 (1st Cir. 2009).  In Pastrana, the court held that notice of intent to dismiss was insufficient to start the clock, and that notice of actual termination following administrative review started the clock.  Id. at 10.  The notice of intent to dismiss read, "I propose to dismiss you."  Id.  The court found that, based upon this correspondence, the plaintiff could not have "reliably kn[own]" that he would be dismissed, relying on a First Circuit case holding that a plaintiff must "reliably know" of an adverse employment action to establish notice.  Id. (discussing Rivera-Muriente v. Agosto-Alicea, 959 F.2d 349 (1st Cir. 1992)).

The Supreme Court's decision in Ricks seemingly also adopted this position – regardless of whether a letter notifies the plaintiff of intent to dismiss or actual dismissal, the concreteness and imminence of the termination is the important inquiry, i.e., whether the plaintiff reliably knew of the termination.  In Pastrana, to reiterate, the notice stated, "I propose to dismiss you."  Id.  In Ricks, the Supreme Court found that, over one year prior to formal termination, the employer stated its official position following a thorough investigation and other internal review processes, thereby time-barring the claim.  449 U.S. at 261-262.

The Supreme Court affirmed Ricks in Chardon v. Fernandez, 454 U.S. 6 (1981) (per curiam) ("[T]he operative decision was made – and notice given – in advance of a designated date on which employment terminated").  The Court reiterated that the proper focus is on the time of the discriminatory act, not the point at which the consequences of the act become painful. Id. at 8.  Therefore, the critical question is a practical examination: whether the letter informed

**Civ. No. 11-2231 (GAG)**

Plaintiff that the game was over or that there was any possibility of reconciliation. The facts in this case align more closely with Ricks and Chardon, which the First Circuit has cited favorably. See e.g., Marrero-Gutierrez v. Molina, 491 F.3d 1, 5-6 (1st Cir. 2007) (citing and following Ricks and Chardon by holding claims accrue when plaintiff knows of either injury or discriminatory animus).

The court's decision is buttressed by the Pastrana court's omission of a discussion of Ricks or Chardon. Furthermore, the opinion on which Pastrana relies, a First Circuit opinion, states, "[T]he statute of limitations begins to run when the plaintiff learns of the decision to terminate his employment (even if the notice he receives is informal)." Rivera-Muriente, 959 F.2d at 353. The court goes on to say, "It is the clarity of the notice he received, not whether it is memorialized on official stationery or reduced in writing . . . ." Id. (citation omitted). "In other words, the accrual date for purposes of a section 1983 employment discrimination case is the date when the employee reliably knew he had lost his job, not the date when the employer dotted a particular 'i' or crossed a particular 't.'" Id. Here, Plaintiff reliably knew of her termination upon receipt of the February 2010 letter, which was received over a year before filing this claim in December 2011.

Plaintiff was transferred to her position at PRHTA through Resolution 2001-13 and Resolution 2001-14. Hernandez declared these resolutions null under Resolution 2010-01 for facilitating hiring in contravention of Puerto Rico's merit principle. An investigation was subsequently undertaken to ascertain the identities of the employees hired in its contravention, and their positions were consequently nullified under Resolution 2010-01. Plaintiff fell into this class of employees. PRHTA then sent her the letter stating its intent to terminate her. The letter states, in relevant part:

9

> As you are aware, this Public Corporation is currently performing and has performed several personnel audits regarding the personnel transactions carried out during the last years therein. In your specific instance, the audit that was carried out revealed that you entered the Highway Authority on July 1, 2002, through a transfer from the Labor Relations Board. Said transfer was authorized through the provisions contained in Decisions 2001-13 from April 25, 2001, and 2001-14 from June 18, 2001. These decisions were declared to be fully null and void according to Decision 2010-1 from January 19, 2010, since said provisions, among others, violated the state of the law in effect at that time as to transfer of human resources between Public Corporations and the Personnel Act that was in effect at that time, Law No. 5 enacted on October 14, 1975, as amended. For the reasons stated above and other legal grounds contained in Decision 2010-01 cited above, I advise you of our intention to declare your original transfer to the Highway and Transportation Authority to be fully null and void and consequently to order that your service therein be terminated. I advise you that, prior to adopting a final decision you are entitled to request an informal administrative hearing that, if you so desire, should be requested in writing within a period of twenty (20) days from notice of this document.
>
> ….
>
> Once the aforementioned period has elapsed or once the Report of the Examining Officer presiding the informal hearing if you request one is received, we shall notify you of the legally appropriate final decision.

(Docket No. 81-4.)

Undoubtedly, this is not a final decision; however, its impact clearly brings to Plaintiff's attention that PRHTA's official position necessitated her dismissal. No reasonable person could dispute whether Plaintiff faced termination and that, although she was entitled to administrative review through which she could be reinstated, the decision was clearly not tentative. She was going to be automatically terminated after twenty days unless she exercised her right to review. Furthermore, PRHTA performed an investigation, crafted and issued an administrative policy, performed a case-by-case review (whether it was selectively enforced is not raised in any

meaningful way here), and determined that Plaintiff fell into the affected group. The notice of intent to terminate states as much. This was clearly PRHTA's official position, and Plaintiff had notice of it. Importantly, the finality of the decision matters little. As previously stated, "[E]ntertaining a grievance complaining of the [adverse employment decision] does not suggest that the earlier decision was in any respect tentative. The grievance procedure, by its nature, is a remedy for a prior decision, not an opportunity to influence that decision before it is made." Ricks, 449 U.S. at 261-62. For these reasons, Plaintiff's termination-based First Amendment argument fails.

Plaintiff also admits she "requested an administrative hearing in connection with the letter of intention to declare her appointment null," indicating she acknowledges that the letter conveyed an intention to terminate her. (Docket Nos. 74 at 18; 87 at 15.) These facts bear strong similarities to the thoroughness and extent of the preceding reviews and discussions undertaken prior to the adverse employment action in Ricks, rather than a single letter stating, "I propose to dismiss you," which is, by definition of the operative word, less reliable than "intending" to dismiss.

The second and final allegation of political discrimination surrounds Plaintiff's reduction-in-responsibility argument. Plaintiff asserts that a series of events constitutes an unlawful reduction in responsibilities, and that these events transpired up until her termination on December 23, 2010. (See e.g., Docket No. 87-5 at 6.) However, Plaintiff states that "everything" happened from July to October 2009, and that they were given access to HR Sense in February or March 2010. (Docket No. 103-1 at 50, 54.) She proceeds to state that Gomila refused to sign a form acknowledging her employment duties in or around May or June 2010. (Id. at 56.) Her allegations even go into July 2010. However, neither Plaintiff's opposition to

**Civ. No. 11-2231 (GAG)**

the summary judgment motion nor her entire deposition and statement of facts alleges any specific adverse employment actions occurring within one year prior to filing this case. (See Docket Nos. 86; 87; 103-1.)

The applicable statute of limitations in political-discrimination continuing violation theory case "will not exclude acts that are part of the same unlawful employment practice if at least one act falls within the time period." Cordero-Suarez v. Rodriguez, 689 F.3d 77, 82 (1st Cir. 2012) (quoting Dressler v. Daniel, 315 F.3d 75, 79 (1st Cir. 2003)). However, no acts fall within the requisite time period. Under a serial continuing violation theory, the claim fails because "[i]t is not enough to show that plaintiff is merely feeling the effects of some earlier discriminatory action." Muniz-Cabrera v. Ruiz, 23 F.3d 607, 610 (1st Cir. 1994). Although she generally states that political discrimination and reduction in responsibilities occurred until the end of her employment on December 23, 2010, nothing in the record implies as much with even a modicum of specificity. Indeed, her opposition to summary judgment states that the stripping of functions occurred "immediately after [Gomila] was appointed" in June 2009. (Docket No. 86 at 7-8; see also Docket Nos. 81-1 – 81-3 (demonstrating no reduction or stripping occurred after July 2010).) The complaint was filed on December 20, 2011, and, with the exception of her formal termination, discussed and resolved above, no adverse employment actions within the previous year are alleged.

For these reasons, Defendants' motion for summary judgment as to the First Amendment claim is **GRANTED** and the court shall not consider whether Plaintiff satisfies the *prima facie* elements of a political discrimination case, or whether the Mt. Healthy defense applies.

    B.  Due Process

Plaintiff also claims Defendants violated her right to procedural due process.  Plaintiff fails to articulate a due process claim, relying only on her oppositions to the motions to dismiss at Docket Nos. 16 and 34 for justification.  It seems that Plaintiff's only grievances are that she was not given any opportunity to participate in the drafting of the Resolution, and that she did not understand the basis for her dismissal.  Even if she was improperly excluded from the Resolution's development, she fails to explain why.  It is also remarkable that an attorney would rely on oppositions to motions to dismiss when opposing a motion for summary judgment, particularly when the oppositions at Docket Nos. 16 and 34 cite nothing from the record, as they must.  The court bears no duty to either craft Plaintiff's due process argument or explore why she was supposed to be a part of the Resolution's execution.  See U.S. v. Zannino, 895 F.2d 1, 17 (1990).  This alone is justification for dismissal.

Plaintiff admits she received the letter discussing the intent to dismiss her and that she underwent an informal review process, which also militates in Defendants' favor because she received notice and embraced her opportunity to be heard.  A formal report was issued and her attorney requested an administrative appeal tribunal to stay the proceedings.  Summary judgment as to Plaintiff's due process claim is **GRANTED** in Defendants' favor.

    C.  Qualified Immunity

The Commonwealth asserts the defense of qualified immunity.  The Commonwealth does a fine job providing the background and governing principles of qualified immunity doctrine. That constitutes the entirety of the argument. It does nothing to advance its particular position and leaves it to the court to apply the facts to the law it recites.  Plaintiff recites the governing law and then immediately concludes by stating, "As such, [P]laintiff Velez has not shown a Constitutional violation committed against her by any of the [D]efendants.  Given these factors,

**Civ. No. 11-2231 (GAG)**

[D]efendants are entitled to qualified immunity." (Docket No. 76 at 25.) This is not an argument. Counsel has merely reworded Chemerinsky and slapped on a concluding sentence. The court will not consider whether Defendants are right because they have not presented any meaningful request for the court to do so; instead, Defendants have provided a generic qualified immunity primer, and they should amend this practice. The motion for qualified immunity is **DENIED**. Zannino, 895 F.2d at 17.

    D.  State Claims

In her opposition, Plaintiff does nothing to advance her state-based claims. She relies only on denials of motions to dismiss and their oppositions. It is incumbent upon Plaintiff to address these claims at the summary judgment stage. Failure to do so merits dismissal. Zannino, 895 F.2d at 17. Accordingly, summary judgment as to Plaintiff's state-based claims is **GRANTED** in Defendants' favor.

**IV. CONCLUSION**

For the reasons discussed above, the motion for summary judgment at Docket No. 76 is **GRANTED.**

It is **SO ORDERED** this 9th day of January, 2014.

                                              /s/ Gustavo A. Gelpi
                                              Hon. Gustavo A. Gelpi
                                              United States District Judge